313 A.2d 375.

STATE *vs.* LOUISE M. LAROSA.

JANUARY 4, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is an indictment which charges that the defendant on November 25, 1970, did unlawfully kill a minor child, Lisa Marie LaRosa. A preliminary hearing was held on November 2, 1971, before a justice of the Superior Court to determine whether or not certain admissions made by the defendant should be suppressed. In his decision the trial justice found that the admissions followed an illegal arrest, and further that the admissions were involuntary. The trial justice thereupon granted the

defendant's motion to suppress the admissions. The case is before us on the state's exception to the decision of the trial justice granting the defendant's motion to suppress the admissions.

The record discloses that between 10:30 and 11:00 p.m., on November 25, 1970 at Roger Williams Hospital, two Providence police officers learned that Lisa Marie LaRosa, the minor daughter of defendant, had deceased.

The officers requested defendant, who was present at the hospital, to accompany them to police headquarters. The defendant arrived at the police station at approximately 11:00 p.m. It also appears that while at the police station defendant was crying and upset, and that the police spent some time trying to calm her. The police testified that upon arrival at the police station defendant was advised of her constitutional rights, and that she signed a "waiver of rights" form. The police testified that defendant was further advised of her constitutional rights at three different intervals during the time she was being interrogated. The defendant made several admissions to the police while being questioned, and these admissions were reduced to writing and signed by defendant (State's Exhibit No. 3). The police testified that although defendant was crying and upset, she nevertheless was able to walk unassisted, and, when she spoke, she was able to be understood.

Angelo Ralph Vecchio, father of defendant, testified that he and his wife arrived at the police station at about 11:30 p.m., that he was allowed to see defendant approximately one hour later, and that his wife was not allowed to see defendant at the police station. He further stated that when he saw defendant at the police station she was seated at a table with three or four policemen around her, that she was slumped in a chair, her face was very white, and she was mumbling to herself. He further testified that

when he was allowed to take defendant home at approximately 2:00 a.m. she was weak, and did not recognize either her mother or himself.

Elisa Vecchio, defendant's mother, testified that she was not allowed to see or talk to her daughter at the police station although she asked to do so many times.

The defendant testified that the signature on the "waiver of rights" form was her signature, but that she did not remember signing it. She further testified that the signature on the admission statement (State's Exhibit No. 3) was her signature, but that she did not remember anything about the interrogation. She stated that she did not recall being advised of her constitutional rights. The defendant also testified that she remembered being at the hospital, but that she was crying and upset, and that while at the police station she did not know what she was doing. She was unable to recall seeing her mother or father, or having signed any papers at the police station.

The trial justice in his decision found that defendant was in fact under arrest when she was brought to the police station. He stated that in order for an arrest without a warrant to be deemed lawful, probable cause must exist. The trial justice stated that since there was no testimony as to the cause of the child's death or defendant's connection with it, probable cause did not exist in the instant case, and the arrest of defendant was therefore illegal. *State* v. *Roach,* 106 R. I. 280, 259 A.2d 119 (1969).

We consequently hold that the trial justice was correct in his finding that the arrest of defendant was illegal.

The trial justice further held that any admissions following an illegal arrest must be suppressed, relying on *Wong Sun* v. *United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State* v. *Dufour,* 99 R. I. 120, 206 A.2d 82 (1965); *State* v. *Mercurio,* 96 R. I. 464, 194 A.2d 574 (1963). The state argues that these cases relied on by

the trial justice are distinguishable from the instant case, in that *Wong Sun* and *Mercurio* did not discuss the rights enumerated in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that "no rights" were given in *Dufour.*

The state, continuing, argues that any "taint" emanating from an alleged illegal arrest is corrected by a subsequent rendition of the *Miranda* warnings and a knowing and voluntary waiver thereof. *United States* v. *Cox,* 459 F.2d 986 (5th Cir. 1972); *Phelper* v. *Decker,* 401 F.2d 232 (5th Cir. 1968); *Thomas* v. *United States,* 377 F.2d 118 (5th Cir. 1967); *Commonwealth of Pennsylvania ex rel. Craig* v. *Maroney,* 348 F.2d 22 (3d Cir. 1965); *Rogers* v. *United States,* 330 F.2d 535 (5th Cir. 1964). The state directs our attention to the recent case of *Sanders* v. *State,* Ind., 284 N.E.2d 751 (1972), wherein the court stated:

> "* * * assuming, *arguendo,* that probable cause for appellant's arrest was lacking, it does not necessarily follow that the confession is inadmissible *per se.* The test governing the admissibility of a confession is whether it was freely and voluntarily given. (citations omitted) To be sure, the circumstances surrounding an unlawful detention are factors which may be considered in determining whether the confession was voluntarily and freely made. However, this is true even when the detention is lawful." *Id.* at, 284 N.E.2d at 755.

We are persuaded that an illegal arrest does not render a subsequent confession inadmissible per se, but that confessions may be admitted after the accused has been advised of his constitutional rights, and has knowingly and voluntarily executed a waiver of said rights.

The trial justice in his decision, recognizing the possibility that a confession tainted by an illegal arrest might be corrected by subsequent rendition of the *Miranda* warn-

ings and a knowing and voluntary waiver thereof, further found that the confession was made by defendant without any coercion or threats being used by the police. He further found as he reviewed the testimony that defendant did not know what she was doing when she made the statements. In other words, the trial justice stated that she did not freely, intelligently, and knowingly waive her rights since she was overcome by emotional stress. He thereupon found that the admissions were not freely and knowingly given, and granted the motion to suppress.

The state contends that the trial justice erred in finding that the confession by defendant was not voluntarily given. The state points out that in determining whether a confession was voluntary or whether a waiver of constitutional rights was freely and knowingly given the court must look at the totality of circumstances surrounding the confession.

This court in *State* v. *Leavitt*, 103 R. I. 273, 237 A.2d 309 (1968), adopted the rule as stated, and indicated that the "clearly erroneous" rule was to be applied to questions of consent and waiver.

A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the basis of the entire evidence is left with the definite and firm conviction that a mistake has been committed. *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *State* v. *Leavitt, supra.*

Here the trial justice in his decision found that the *Miranda* warnings were given, and that there was no coercion or threats directed at defendant. He further found that during the entire interrogation defendant was crying, sobbing, and upset, and was later unable to remember what had transpired. He concluded that defendant was overcome by emotional stress.

We have heretofore stated the evidence before the trial justice at some length. From our review of the evidence we cannot say that the decision of the trial justice that the defendant's consent to the waiver and admission was not freely and voluntarily given was clearly wrong.

The state's exception to the decision of the trial justice in suppressing the defendant's admissions is overruled, and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *Edward E. Dillon, Jr.*, Special Asst. Attorney General, for plaintiff.

*Aram A. Arabian, Thomas L. Marcaccio, Jr.*, for defendant.