Thomas B. FULLMAN,
Plaintiff-Appellant,

v.

Charles GRADDICK, et al.,
Defendants-Appellees.

No. 83–7205.

United States Court of Appeals,
Eleventh Circuit.

Aug. 20, 1984.

554

David H. Thomas, Birmingham, Ala., for plaintiff-appellant.

Hillard R. Reddick, Jr., Edward L. Hardin, Jr., Birmingham, Ala., Algert S. Agricola, Jr., Montgomery, Ala., for Charles Graddick.

Furner, Boyce & Nave, Dick D. Nave, Bessemer, Ala., for Douglas Acker, J.R. Pace, Carl Potera, George Barron and City of Bessemer.

C. Michael Crenshaw, Birmingham, Ala., for Rick Jones.

Robert Parsons, William G. Gantt, Birmingham, Ala., for Birmingham Trust.

J. Fred Wood, Jr., Ezra B. Perry, Jr., Birmingham, Ala., for Melvin Bailey and Fred House.

J. Scott Vowell, Birmingham, Ala., for Ronald D. Morgan.

James S. Ward, Birmingham, Ala., for Aubrey Garrett.

Frank S. James, III, Jr., Asst. U.S. Atty., Birmingham, Ala., for John B. Stuart.

Roger Lee, Birmingham, Ala., for Carter Roberts.

Robert Emmett Paden, Bessemer, Ala., for William A. Short.

Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

RONEY, Circuit Judge:

Thomas B. Fullman was charged with capital murder, mayhem, and assault in connection with a May, 1979, bombing of the City Hall at Bessemer, Alabama. After a mistrial due to a hung jury, Fullman was acquitted of all charges in a second trial. He then brought a civil suit for damages under 42 U.S.C.A. § 1983 against fifteen public officials, witnesses and a bank based on the investigation, arrest, interrogation, indictment, and trial.[1] All of his claims were dismissed by the district court pursuant to motions to dismiss for failure to state a cause of action or motions for summary judgment. Plaintiff appeals. We affirm.

Because plaintiff's claims are so numerous and varied, we will address the case against each defendant individually. A general issue, however, which arises repeatedly throughout this action is the effect of plaintiff's failure in many instances to provide any support for conclusory allegations set forth in his complaints, even after amendment, and his responses to summary judgment motions. The Federal Rules of Civil Procedure require that a complaint contain a " 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Even under the so-called notice rules of pleading, the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for

> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13 at 8–118 (2 ed. 1984) (citations omitted).

In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dis-

---

1. All of the fifteen defendants named in plaintiff's amended complaint are parties to this appeal. They are:
 1. Charles Graddick, Alabama Attorney General
 2. William A. Short, Jr., Jefferson County Assistant District Attorney
 3. John B. Stuart, United States Postal Inspector
 4. Melvin Bailey, Jefferson County Sheriff
 5. George W. Barron, Bessemer Police Chief
 6. Carl J. Portera, a Bessemer police officer
 7. J.R. Pace, a Bessemer police officer
 8. Douglas F. Acker, a Bessemer police officer
 9. Fred House, a Jefferson County Deputy Sheriff
 10. The City of Bessemer
 11. Carter D. Roberts, an individual
 12. Rich Jones, an individual
 13. Aubrey M. Garrett, an individual
 14. Ronald D. Morgan, an individual
 15. Birmingham Trust National Bank
 Plaintiff named an additional defendant, Globe Communications Corporation, in a separate "amendment" to the amended complaint. The case against Globe was subsequently treated as a separate filing, and Globe is not a party on this appeal.

missed as insufficient where the allegations it contains are vague and conclusory. *See, e.g., Burnett v. Short,* 441 F.2d 405 (5th Cir.1971); *Guedry v. Ford,* 431 F.2d 660 (5th Cir.1970); *Granville v. Hunt,* 411 F.2d 9 (5th Cir.1969). In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. *See Ostrer v. Aronwald,* 567 F.2d 551 (2d Cir.1977); *United States Ex Rel. Simmons v. Zibilich,* 542 F.2d 259 (5th Cir.1976). *See also Black v. United States,* 534 F.2d 524 (2d Cir.1976); *Fine v. City of New York,* 529 F.2d 70 (2d Cir.1975). A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy. 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.17[5] at 8–180, 181 (2 ed. 1984). Similarly, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment for

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). *See also Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869, 872 (5th Cir. 1978). This is consistent with one of the purposes of the summary judgment mechanism, that is, to unmask frivolous claims and put a swift end to meritless litigation, *see Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980), which is especially pertinent where, as here, plaintiff employs a "shotgun" approach to litigation, leaving the court with the cumbersome task of sifting through myriad claims, many of which are foreclosed by governmental immunities, statutes of limitations and similar defenses. In such cases, the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn,* 613 F.2d at 445.

A second issue which recurs throughout this action concerns the propriety of the district court's dismissal of the majority of plaintiff's conspiracy claims on statute of limitations grounds. The court applied Ala.Code § 6–2–39(a)(5) (1977), which provides for a one-year limitations period for "[a]ctions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section," to dismiss these and other of plaintiff's claims. There is no question that this is the applicable statute with reference to conspiracy claims in Alabama, and that it is correctly applied in a § 1983 action such as this one. *Beard v. Stephens,* 372 F.2d 685, 688 (5th Cir.1967). In such cases, where Congress has not prescribed a period for enforcement of a federal right, "[t]he federal courts borrow the limitations period prescribed by the state where the court sits." *Id.* at 688.

Plaintiff challenges the dismissal of his conspiracy claims under § 6–2–39(a)(5) on three grounds. *First,* he argues that the statute was tolled under Ala.Code § 6–2–8(a) due to his incarceration pending trial. *Second,* he contends the statute was tolled due to fraudulent concealment which presumably precluded his discovery of the conspiracy involving Aubrey Garrett within the statutory period, Ala.Code § 6–2–3. *Third,* he asserts that his claims are grounded on malicious prosecution and that, therefore, the limitations period should not begin to run until the termination of the criminal proceedings in his favor.

We note that this Court has recently certified to the Alabama Supreme Court, *see Whitson v. Baker,* 732 F.2d 856 (11th Cir.1984), the question of whether Ala.Code § 6–2–8(a) applies to pre-trial detainees, as that court has never ruled on the effect of this tolling provision on an action initiated by a plaintiff who was a pretrial detainee at the time his cause of action arose. Because there are other grounds which sup-

port the dismissal of claims which the district court held barred by the statute of limitations, we affirm the judgment for defendants without deciding whether the statute of limitations would also bar the asserted causes of action.

1. *Charles Graddick, Attorney General of the State of Alabama*

Plaintiff alleges that Charles Graddick, the Alabama Attorney General, was a party to conspiracies in connection with the issuance of the search warrants authorizing a search of plaintiff's automobile and premises; a May 9, 1979 interrogation of plaintiff; the signing of the arrest warrant; the withholding of material evidence Graddick knew would aid plaintiff's defense; and two press conferences at which false information was allegedly "leaked" to the media. He further asserts that Graddick conspired to create and proffer perjured testimony, and participated in the wrongful taking and search of plaintiff's trash when the search warrants were executed.[2]

The district court dismissed all but the latter two claims on a motion to dismiss, and subsequently dismissed those claims on a motion for summary judgment. We affirm on the ground that most of Graddick's activities were within the ambit of those protected by absolute prosecutorial immunity, and the alleged facts do not support the claim as to the others.

The doctrine of absolute prosecutorial immunity from civil damages suits under § 1983 for actions "intimately associated with the judicial phase of the criminal process" was expressly recognized in *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976). The more difficult question arises in a situation where functions performed by a prosecutor "cast him in the role of an administrator or investigative officer rather than that of advocate," *Id.* at 430–431, 96 S.Ct. at 995. In such cases, a qualified good-faith immunity applies rather than the absolute immunity associated with the judicial process. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Marrero v. City of Hialeah*, 625 F.2d 499, 506 (5th Cir.1980).

In *Imbler*, absolute prosecutorial immunity was extended to allegations that a prosecutor knowingly used false testimony and suppressed material evidence at trial. 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. In *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir.1979), this Court held that allegations of filing an information without an

**2.** Specifically, plaintiff alleges that Graddick

a. conspired with STUART to use false statements in the affidavit for the search warrants issued on/about June 18, 1979 authorizing search of automobiles and premises of plaintiff (BARRON and GARRETT also named as conspirators).

b. ordered the wrongful taking and search of plaintiff's trash.

c. assisted in "Star Chamber" interrogation of plaintiff on May 9, 1979, for purpose of questioning plaintiff without plaintiff having the benefit of counsel, and for purpose of coercing plaintiff into confessing to crime he did not commit.

d. participated in press conference on May 9, 1979 where false information was leaked.

e. signed arrest warrant alleging plaintiff committed murder on basis of statements which he helped "create"—knew there was no probable cause.

f. conspired with BARRON and BARRETT to unlawfully arrest plaintiff in violation of Fifth Amendment, Fourteenth Amendment, and 42 U.S.C.A. § 1983.

g. conspiracy to unlawfully detain and confine plaintiff.

h. participated in second press conference after plaintiff's arrest to create carnival atmosphere and to leak false information.

i. conspired to violate § 1983 and to impede due process with intent to deny plaintiff equal protection.

j. conspired with SHORT and ROBERTS to withhold material evidence that they knew would aid plaintiff's defense.

k. conspired with GARRETT to create and proffer perjured testimony.

l. conspired to cause search warrants to be issued based on false statements in violation of plaintiff's Fourth Amendment and Fourteenth Amendment rights.

m. conspired with SHORT and STUART to create an atmosphere calculated to deny plaintiff due process.

n. directed SHORT in obtaining warrant for plaintiff as material witness.

o. conspired with SHORT and PORTERA to offer perjured testimony.

investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate complaints about the prison and threatening defendant with further criminal prosecution were within the absolute immunity recognized in *Imbler*, and could not be the basis for recovery under § 1983.

■■■ In this case, the only allegations not expressly barred by the doctrine of absolute prosecutorial immunity are those which claim that Graddick ordered, directed, and participated in searching plaintiff's trash without a proper search warrant, and that Graddick leaked false information to the press. As for the trash search, plaintiff has failed to supply anything other than conclusory allegations "upon information and belief" in response to Graddick's affidavit stating that neither he nor anyone acting on his behalf assisted in obtaining the search warrants at issue, or participated in the search of the premises, automobiles, or trash, and that he did not know the search warrants had been obtained until two days after their issuance. The case is therefore distinguishable from *Marrero*, 625 F.2d at 499, where the prosecutor performed the function of a police officer by actually accompanying officers on a search for stolen items, and conferring with the officers during the search.

As for the claim that Graddick conspired with others to leak false information to the press, plaintiff has contended only that he is prepared to prove this allegation at trial. No contentions sufficient to state a cause of action have been advanced. The allegations do not indicate what the false information was, or whether it was actually conveyed by any defendant at any press conference. The district court's dismissals of the claims against Attorney General Graddick were proper.

2. *William A. Short, Jr., Assistant District Attorney for Jefferson County, Bessemer Division.*

Plaintiff alleges that William A. Short, Jr., a prosecuting attorney, conspired with Graddick to obtain search warrants based upon falsehoods; aided in executing the warrants knowing they were invalid due to lack of probable cause in order to harass plaintiff and violate his right to privacy; acted at the search of plaintiff's premises in violation of search and seizure laws and in a manner which resulted in the slander of plaintiff's personal and business reputation; caused plaintiff to be falsely arrested without probable cause and falsely imprisoned under a warrant which he made false statements to obtain; participated in press conferences "with the intent of creating a carnival atmosphere calculated to deny plaintiff's due process of law by deliberately leaking false information;" assisted in intimidating plaintiff into confessing to a crime he did not commit at a May 9, 1979, "Star Chamber" interrogation; and conspired to withhold evidence in his possession which he knew would aid plaintiff's defense, and to create and proffer perjured testimony.

■■■ As a prosecutor, Short is entitled to *Imbler* immunity from § 1983 liability for those actions associated with initiating a prosecution and presenting the state's case. 424 U.S. at 431, 96 S.Ct. at 995. The district court properly dismissed plaintiff's claims that Short conspired to withhold evidence and to create and proffer perjured testimony on this theory. *See Henzel v. Gerstein*, 608 F.2d 654 (5th Cir.1979); *Prince v. Wallace*, 568 F.2d 1176, 1178–79 (5th Cir.1978) (prosecutorial immunity held applicable "even where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts"). A review of the record and of the other claims against this defendant reveals that all either are so closely connected to Short's responsibilities as a prosecuting attorney that prosecutorial immunity insulates his activities from civil liability or are so conclusory that they create no issue of fact that would support the claim.

3. *John B. Stuart, Postal Inspector for the United States Post Office.*

Plaintiff contends that John B. Stuart, a federal postal official, who supervised the

investigation caused the issuance of search warrants based in part upon his own false statements in order to harass and violate the privacy of the plaintiff; conspired with other defendants to design falsehoods regarding conversations which did not actually occur for inclusion in his affidavit for a search warrant; conspired with others to make false statements in the affidavit; and participated in the search of plaintiff's premises which was filmed and later published by the local news media.

■ The district court properly concluded that these allegations must be considered under a *Bivens* type of constitutional tort theory, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), since § 1983 actions do not lie against federal law enforcement officials.

■ A review of the complaint reflects that, even as amended after its initial dismissal by the district court for failure to "allege any facts on which to base a charge of conspiracy to deprive plaintiff of his civil rights," the complaint fails to assert the conspiracy allegations with sufficient specificity to state a claim for which relief may be granted Fed.R.Civ.P. 12(b)(6). Plaintiff does not identify which of Stuart's search warrant affidavit statements were false. He simply alleges that "the warrant was invalid as having been issued as a result of the false statements and deception perpetrated on the district court by defendant John B. Stuart's affidavit for the search warrant of plaintiff's home and van."

■ The remaining claims were dismissed by the district court on summary judgment on grounds that the qualified immunity afforded law enforcement officials, which requires that the official reasonably believe, in good faith, that his conduct was lawful, applied to Stuart's actions. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Plaintiff identifies no error in the factual findings or legal conclusions of the district court. He simply argues that determinations of good faith must be made by a jury before qualified immunity may be recognized. The law is contrary. In *Butz v. Economou*, 438 U.S. at 507–08, 98 S.Ct. at 2911–12, the Supreme Court explicitly stated that "damage suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity." Similarly, in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), the court again confirmed that the qualified immunity defense may properly be considered on a motion for summary judgment:

> [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 861 [55] L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. [308] at 321, 95 S.Ct. [992] at 1000 [43 L.Ed.2d 214].
>
> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. (footnotes omitted.)

4. *Melvin Bailey, Jefferson County Sheriff:*

Plaintiff's sole allegation against Sheriff Melvin Bailey is that he arbitrarily and capriciously denied plaintiff a permit to carry a firearm in violation of plaintiff's right to due process and to equal protection.

■■■■ The district court dismissed the claim on the ground that plaintiff has failed to allege an actionable wrong under § 1983. The two elements required for success in stating a § 1983 claim are

(1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). The court properly concluded that the second element is absent in this case because plaintiff has no property right in the denial of a pistol permit. Alabama gives county sheriffs the discretion to issue or deny a pistol license, Ala.Code § 13–6–155 (1975). No § 1983 cause of action exists for the exercise of this discretion in favor of denial of the permit absent some constitutionally impermissible consideration. *See Erdelyi v. O'Brien,* 680 F.2d 61 (9th Cir.1982); *Brescia v. McGuire,* 509 F.Supp. 243 (S.D. N.Y.1981). None is alleged here.

5. *George W. Barron, Bessemer Chief of Police:*

Plaintiff claims that Police Chief George W. Barron executed the search warrants knowing they were invalid, based upon false statements, and without probable cause for purposes of harassment and invasion of privacy in violation of the Fourth and Fourteenth Amendments; signed the arrest warrant which was without probable cause, and resulted in the false arrest and false imprisonment of the plaintiff; conspired to deprive plaintiff of his life for a crime which he knew plaintiff did not commit; conspired to unlawfully arrest plaintiff and deprive him of constitutional due process and equal protection entitlements; conspired with other defendants to impede, hinder, obstruct or defeat the due process of justice; conspired with Graddick and Garrett to create and proffer perjured testimony; and conspired to violate plaintiff's right to be secure in his home and possessions by execution of search warrants not based on probable cause.

■■■■ None of plaintiff's conspiracy claims against Barron were stated with sufficient particularity to withstand this defendant's motion to dismiss. The same is true of the allegations dismissed on the ground of good-faith immunity. The record contains no support for plaintiff's conclusory allegations that the search and arrest warrants were based upon false statements or deceptions, and lacked probable cause. On the contrary, Barron's affidavit details the probable cause which existed for the warrants. Moreover, the warrants were facially valid, and the uncontroverted facts show that the arrest warrant was executed in good faith and with probable cause. *See United States v. Leon,* ——— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Summary judgment was properly granted, *Greer v. Turner,* 639 F.2d 229 (5th Cir.1981), for Barron is immune from civil action on these claims. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

6. *Carl J. Portera, Jr., Bessemer police officer:*

■■■ Plaintiff alleges that police officer Carl J. Portera conspired with Short and Graddick to create and proffer perjured testimony at plaintiff's trial.

The district court properly granted summary judgment in this defendant's favor because the conspiracy claims advanced by the plaintiff are vague and conclusory. Plaintiff failed to comply with the court's order to provide a more definite statement with regard to this conspiracy claim. The order directed plaintiff to file such a statement within fifteen days. No response was received until seventy-five days later, when plaintiff filed an amended complaint

which in effect re-alleged the claims without providing the requisite support for them. Moreover, the plaintiff filed no response to this defendant's motion for summary judgment and supporting documents as required by Fed.R.Civ.P. 56(e).

### 7. *J.R. Pace, Bessemer police officer:*

Plaintiff contends that J.R. Pace, a Bessemer police officer conspired with other defendants to hinder and obstruct the due course of justice and to violate plaintiff's right to be secure in his home and possessions, and assisted in executing the search warrants knowing that they lacked probable cause and were based on falsehoods.

 We affirm the district court's dismissal of the claims against Officer Pace. The warrants at issue were proper on their faces. Plaintiff nowhere indicates the nature of the alleged defects in the warrants. His complaint and amended complaints assert only conclusory allegations as to the claimed conspiracy and the lack of probable cause for the warrants. These are contradicted by the affidavits filed by Chief of Police Barron, and Postal Inspector Stuart. Mere unfounded and unsupported allegations that the warrant was not based on probable cause, but rather upon false statements, and deception are not sufficient to subject officials to the cost and burdens of trial. The uncontroverted facts show that the warrants were executed with probable cause and in good faith. *See Scheuer v. Rhodes*, 416 U.S. 232, 247–248, 94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90 (1974); *Procunier v. Navarette*, 434 U.S. 555, 563, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1977).

### 8. *Douglas Acker, Bessemer police officer:*

Certain of plaintiff's claims against Douglas Acker, a Bessemer police officer are the same as those against Officer Pace, and are discussed and disposed of in the preceding section. In addition Officer Acker is alleged to have received plaintiff's bank records without subpoena or other legal process in violation of plaintiff's right to privacy. This unsupported allegation is contradicted by the affidavits of the officers of Birmingham Trust National Bank, which indicate that none of plaintiff's records were released to any person at any time by the bank or its employees.

As for Acker's alleged wrongful actions with regard to plaintiff's bank records, we refer to our discussion of this issue in the section of this opinion entitled "Birmingham Trust National Bank."

### 9. *Fred House, Deputy Sheriff in Jefferson County:*

Plaintiff alleges that Deputy Sheriff Fred House assisted in the execution of the search warrants knowing that they lacked probable cause and were based upon falsehoods; was present at the May 9, 1979 interrogation of plaintiff at which it is claimed plaintiff was questioned without benefit of counsel by officials attempting to intimidate him into confessing a crime he did not commit; and conspired with other defendants to violate plaintiff's right to be secure in his home and possessions.

 The point concerning execution of facially valid warrants is considered in the portion of this opinion which dismisses the claims against officers Pace and Acker. As for the conspiracy and "presence at the interrogation" claims, both were asserted only in vague and conclusory terms, despite the numerous opportunities the district court afforded plaintiff to correct these defects.

### 10. *City of Bessemer, Alabama:*

Plaintiff alleges that the City of Bessemer is liable for damages because city officials knew of the wrongful conduct of its agents and employees, yet took no action against them; the city praised its agents for their actions, thereby encouraging their wrongful conduct; a scheme was initiated and promulgated by elected and appointed officials (police commissioner) to abuse the legal and judicial process and deprive plaintiff of his constitutional rights; and the city abused search and seizure law and

willfully slandered the reputation of the plaintiff.

 We affirm the dismissal of the claims against the City of Bessemer on the ground that plaintiff has failed to plead a formal policy or an informal custom, of such long standing as to have the force of law, which has caused the deprivation of plaintiff's civil rights. Such a showing is a necessary element in order for municipal liability to exist under § 1983. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Batista v. Rodriguez,* 702 F.2d 393 (2d Cir.1983). Plaintiff fails to identify the "City's policy or custom which deprived him of his constitutional rights" which he refers to in his brief on this appeal. Absent such identification, the city is not liable under § 1983 for the alleged wrongful acts of its police officers.

11. *Carter D. Roberts, an individual:*

Plaintiff claims that this private individual, Carter D. Roberts, conspired with Graddick to include false statements in the affidavit for the search warrants, and conspired with other defendants to withhold material evidence of a conversation that he knew would aid Fullman's defense.

 As reflected in the preceding discussion, the conspiracy claims are too vague and conclusory to support a cause of action. As to plaintiff's contention that Roberts engaged him in a conversation, recorded the conversation, and subsequently refused to provide a transcript when the court ordered that it be released pursuant to plaintiff's request, the court properly entered summary judgment for defendant on the ground that the plaintiff failed to state an actionable claim under § 1983 because (1) the requisite state action did not appear to be present, as Roberts allegedly agreed only to engage plaintiff in conversation and to record the conversation for the state ("He did not direct or request the arrest of plaintiff, but merely reported what he had heard."); and (2) plaintiff failed to allege that Roberts' conduct deprived him of § 1983-protected rights. In

explaining the second basis for decision, the court observed that

> [e]ngaging a person in conversation certainly does not deprive that person of his constitutional rights. Furthermore, the court order which directs the *district attorney* ... to provide plaintiff with an opportunity to listen to any recordings of plaintiff's conversation is not directed in any way to ... Roberts. It is not alleged that he even has possession of or access to a copy of the tape.... Additionally, the court notes that plaintiff presented no evidence that he ever raised the issue [of the fact that the court order was not complied with by the district attorney's office] during this criminal trial.

As for the claim regarding Roberts' recording of the conversation, the district court properly concluded that plaintiff failed to state a cause of action against this defendant under § 1983, for the reasons stated in its opinion. We do not consider the additional claims against Roberts which plaintiff mentions for the first time in his brief on this appeal.

12. *Rick Jones, an individual:*

Plaintiff contends that this private individual, Rick Jones conspired with defendant Short to produce perjured testimony at plaintiff's murder prosecution. Specifically, plaintiff's second amended complaint alleged that this defendant engaged the plaintiff in telephone conversations which he recorded at the instigation of Short, and committed perjury at plaintiff's murder trial as a result of conspiracy with Short.

The district court granted summary judgment in Jones' favor, concluding that plaintiff had failed to state an actionable claim under § 1983 on his first point, and that plaintiff's second contention cannot prevail because of the immunity afforded witnesses for their testimony at trial.

 For the same reasons explained in the portion of the opinion dealing with defendant Roberts' alleged recording of a conversation held with the plaintiff, we

hold that Jones' alleged actions with regard to the phone conversations in no way violate any right protected by § 1983. We note that plaintiff's second amended complaint failed to state where and when the alleged conversations occurred, what was said, or when Short requested Jones to telephone the plaintiff.

■■■ The second claim falls because a witness is entitled to immunity from liability under § 1983 for his trial testimony. *See Charles v. Wade,* 665 F.2d 661, 665 (5th Cir.1982), *cert. denied,* 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983). We note also that the second amended complaint failed to identify the portions of Jones' testimony which were allegedly perjured. The general allegations made did not provide Jones with enough information to adequately prepare a defense, even in the absence of an immunity defense.

### 13. *Aubrey M. Garrett, an individual:*

Plaintiff alleges that this private individual, Aubrey M. Garrett conspired with defendants Graddick, Roberts, Barron, and Short to fabricate conversations which never occurred to be used in Stuart's search warrant affidavit; conspired with other defendants to hinder and obstruct due process by creating and proffering perjured testimony in plaintiff's murder prosecution; and conspired with Barron and Graddick in relation to issuance of the arrest warrant.

The district court properly entered judgment on these claims. The conspiracy claims have been previously discussed. Plaintiff failed to comply with the court's order that he submit a more definite statement as to the claim. Plaintiff likewise failed to file any opposition to the defendant's motions and documents in support of summary judgment.

### 14. *Ronald D. Morgan, an individual:*

Plaintiff contends that this private individual, Ronald D. Morgan, conspired with defendant Stuart to fabricate statements regarding conversations between plaintiff and Morgan which never occurred, and to use these statements in Stuart's affidavit for search warrants; and conspired with other defendants to hinder and obstruct the due process of justice with intent to deny plaintiff liberty in violation of § 1983.

The claims against this defendant are not substantially different from those previously discussed. Plaintiff failed to comply with the court's order directing him to submit a more definite statement as to the claimed conspiracy, and likewise failed to respond to the summary judgment motion and supporting affidavits filed by Morgan.

Plaintiff offers no support for his conclusory allegations on either claim. Despite the trial court's attempt to afford plaintiff ample opportunity to amend the complaint and state a factual basis for the allegations, plaintiff has failed or refused to do so. It is axiomatic that a complaint must contain a " 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). It is insufficient "to indicate merely that the plaintiff has a grievance ... sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining and can see that there is some legal basis for recovery." 2A Moore's Federal Practice ¶ 8.13 at 8–118.

### 15. *Birmingham Trust National Bank (BTNB):*

■■■ Plaintiff contends that Birmingham Trust National Bank (BTNB) violated his right to privacy by releasing copies of plaintiff's records, in the form of cancelled checks, to defendant police officer Acker without subpoena or other legal process.

Plaintiff failed to allege that any actions of BTNB were taken under color of state law. He likewise failed to address the affidavit filed by BTNB which categorically denied that BTNB had at any time disseminated copies of or information regarding plaintiff's bank records to any person or entity.

We affirm the district court's dismissal of plaintiff's claim against BTNB because no jurisdictional basis has been alleged for this § 1983 claim, as plaintiff has failed to claim or demonstrate that defendant acted under the color of a state or local law, and because plaintiff has failed to demonstrate the existence of fraudulent concealment necessitating the belated filing of this claim. His argument on the latter point consists of mere unfounded allegations. Moreover, plaintiff's failure to respond to the affidavit of BTNB as required under Fed.R. Civ.P. 56(e), which provides that "[w]hen a motion for summary judgment is made and supported [by affidavits] ... an adverse party may not rest upon the mere allegations or denial of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial," would have justified a grant of summary judgment in favor of BTNB in any event.

AFFIRMED.